## UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

JAMES DeSHIELDS,

    Plaintiff,

    v.

DOUGLAS DILL, *Head of Classification*,
LAURA ARMSTEAD, *Warden*, and
WINNIE MOTT, *Chief of Security*,

    Defendants.

Civil Action No.: TDC-21-0971

## MEMORANDUM OPINION

While incarcerated at the Patuxent Institution ("Patuxent") in Jessup, Maryland, self-represented Plaintiff James DeShields brought this civil action pursuant to 42 U.S.C. § 1983 against Defendants Laura Armstead, the Warden of Patuxent; Douglas Dill, the Head of Classification at Patuxent; and Patuxent Chief of Security Winnie Mott.  DeShields alleges that Defendants violated his constitutional rights by failing to protect him from an assault by another inmate, improperly charging him with rule violations, and housing him in a condemned building. Defendants have filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, which is fully briefed.  Upon review of the submitted materials, the Court finds that no hearing is necessary.  *See* D. Md. Local R. 105.6.  For the reasons set forth below, Defendants' Motion will be GRANTED.

## BACKGROUND

DeShields alleges that on October 20, 2020, while he was in an "open dorm area" at Patuxent, another inmate stabbed him in the side of his body.  Compl. at 1-2, ECF No. 1.

According to DeShields, the correctional officers on duty at that time were sleeping, likely because they were overworked, and thus failed to conduct rounds every 30 minutes as required by prison rules. DeShields asserts that Warden Armstead and Chief Mott are responsible for the assault because the Warden lacks control over Patuxent, and Mott failed to ensure that all security cameras were working and that correctional officers were conducting rounds as required. DeShields also claims that Dill has subjected him to unconstitutional conditions of confinement by refusing to transfer him to a different facility and instead housing him at Patuxent, where there are rodents, asbestos, and lead in the water.

According to Defendants, at the time of the incident on October 20, 2020, DeShields was housed in the B-Wing, Dorms 1 and 2, which had a dayroom with a communal microwave and other basic items for inmate use. At approximately 9:57 a.m., DeShields began using the microwave when another inmate, Benjamin Chase, confronted him. After exchanging words, DeShields went into the laundry room while Chase went to Dorm 1 and retrieved an object from the second bunk in that unit. As DeShields returned to the microwave, Chase "threw a punch-like blow" to the left side of DeShields's face and neck, causing DeShields to fall to the ground. *See* Intelligence & Investigative Division ("IID") Records at 5, Mot. Ex. 1, ECF No. 14-3. DeShields then realized that Chase had stabbed him with a pen.

Within 30 seconds of the stabbing, two correctional officers, including Officer Zephyrin Mukangu, entered the housing unit and intervened. As Officer Mukangu stood between the two inmates, DeShields picked up a metal oscillating floor fan and attempted to strike Chase but missed and may have hit Officer Mukangu instead. Although the initial reports stated that the fan struck Officer Mukangu, when Officer Mukangu was interviewed a month later as part of an investigation of the incident by the Intelligence and Investigative Division ("IID"), he told the IID that DeShields

2

had not actually struck him. The IID investigation also determined that Chase was not a validated member of any security threat group. In fact, Chase and DeShields had been housed together in the same unit for approximately five months without a previous fight. They had played dominoes together, but DeShields had recently stopped playing with Chase because he believed that Chase was on K2 (synthetic marijuana).

As a result of this incident, Chase was charged with four Inmate Rule Violations, including engaging in a disruptive act, assault and battery on an inmate, possessing and using a weapon, and participating in reckless behavior. Chase was found guilty of all four violations and was sanctioned with 30 days of segregation and revocation of 60 credits.

On October 22, 2020, DeShields was charged with violations of Inmate Rules 100 (engaging in a disruptive act), 101 (committing assault or battery on staff), 308 (possessing state property without permission, or tampering with, damaging, or destroying state property), and 501 (participating in reckless behavior) based on his attempt to strike Chase with the fan. At an adjustment hearing on October 27, 2020, DeShields pleaded guilty to the Inmate Rule Violations and received a sanction on the Rule 100 violation only, consisting of 30 days of segregation and revocation of 60 credits. At the time, the hearing officer informed DeShields that entering a guilty plea to the Inmate Rule Violations would waive his right to appeal the adjustment hearing disposition to the Warden, but DeShields chose to proceed with his guilty plea. Nevertheless, DeShields was provided a form for filing an appeal of the hearing officer's decision. According to the form, any appeal had to be submitted to the Warden within 15 days, and if the appeal was denied or no response was received within 30 days, the inmate could file a grievance with the Inmate Grievance Office ("IGO") within 30 days.

3

According to DeShields, he "wrote the Warden at Patuxent Institution . . . to review the case." IGO Records at 2, Mot. Ex. 3, ECF No. 14-9. On January 13, 2021, DeShields sent a letter to the IGO complaining about the sanctions imposed on him. On February 16, 2021, the IGO sent a letter to DeShields stating that his letter was determined to be an appeal from a disciplinary proceeding, but DeShields had failed to provide a copy of his appeal to the Warden. DeShields responded by asserting that he had sent an appeal to the Warden but had received no response. On March 24, 2021, the IGO notified DeShields that his grievance regarding the disciplinary hearing was dismissed because he "failed effectively to challenge the sufficiency of the evidence underlying the finding of guilt, or any interpretations of law, or compliance with procedural requirements or constitutional principles of due process, or the sanctions imposed." *Id.* at 24. The IGO also stated that the grievance was dismissed as "wholly lacking in merit" because DeShields did not properly exhaust remedies available under the disciplinary process. *See id.*

Beyond his efforts to appeal the results of the disciplinary proceedings, DeShields did not file any complaints or grievances relating to the claims in his Complaint. Specifically, he did not file an Administrative Remedy Procedure complaint ("ARP") relating to the stabbing incident on October 20, 2020 or the conditions of confinement described in the Complaint. According to Defendants, DeShields filed only one ARP while he was at Patuxent, in which he complained about the lack of hot water for showers.

### DISCUSSION

In their Motion, Defendants seek dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56 on the grounds that: (1) under the Eleventh Amendment to the United States Constitution, they are immune from suit in their official capacities; (2) DeShields failed to exhaust administrative remedies; (3) DeShields has not alleged

4

any personal involvement by Defendants in the relevant events so as to establish direct liability and has failed to state a claim for supervisory liability; (4) DeShields has failed to alleged sufficient facts or provide sufficient evidence to show that Defendants violated his constitutional rights; and (5) Defendants are entitled to qualified immunity.

## I. Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Defendants have attached several exhibits to the Motion, including surveillance video of the incident and a recording of DeShields's disciplinary hearing. Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one

5

for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. *See* ECF No. 14. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). In opposing the Motion, DeShields has attached exhibits of his own and has not asserted that he needs discovery in order to address their Motion. The Court will thus construe Defendants' Motion as a motion for summary judgment for purposes of the arguments requiring consideration of the submitted exhibits.

Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing

law." *Anderson*, 477 U.S. at 248.  A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.     Eleventh Amendment

Defendants assert that they are immune from claims against them in their official capacity based on the Eleventh Amendment, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  In effect, the Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived sovereign immunity or Congress has abrogated its immunity.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").  "[A] suit against a state official in his or her official capacity is . . . a suit against the official's office" and thus is the equivalent of "a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Although Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a) (West 2021), it has not waived its immunity under the Eleventh Amendment to a suit of this kind in federal court.  Accordingly, Defendants are immune from suit for actions taken in their official capacity.  Any such claims will be dismissed.

## III.    Exhaustion of Administrative Remedies

Defendants assert that DeShields's claims should be dismissed because he has failed to exhaust administrative remedies.   Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2018). Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) (holding that "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones").   "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable: when officers are "unable or consistently unwilling to provide any relief to aggrieved inmates," when the procedure is "so opaque that it becomes, practically speaking, incapable of use," or when "prison administrators thwart inmates from taking advantage of [filing grievances] through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44.

In the Maryland state prison system, the Administrative Remedy Procedure is the administrative process that must be exhausted. *See Ross*, 578 U.S. at 637; Md. Code Regs. §

8

12.07.01.01B(1) (2022) (defining the "administrative remedy procedure"). First, a prisoner must file an ARP with the warden within 30 days of the incident at issue. Md. Code Regs. § 12.02.28.05(D)(1) (requiring filing with the "managing official"); *id.* § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); *id.* § 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. *Id.* § 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the IGO. *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210; Md. Code Regs. § 12.07.01.05(B). Inmates may seek judicial review of the IGO's final determinations in the appropriate Maryland Circuit Court. *See* Md. Code Ann., Corr. Servs. § 10-210(a).

Here, Defendants have provided a declaration from a Patuxent official stating that a records search has established that DeShields has filed no ARPs since 2018. Thus, DeShields filed no ARP relating to the alleged presence of asbestos, rodents, or lead in the water at Patuxent. Accordingly, his Eighth Amendment claim of unconstitutional conditions of confinement will be dismissed for failure to exhaust administrative remedies.

As for his due process claim based on the disciplinary proceedings, Defendants acknowledge that the ARP process does not apply to such a complaint. Rather, he was required to appeal the result of his adjustment hearing first to the Warden and then to the IGO. *See* Md. Code Regs. §§ 12.03.01.30(A)(3)(b), 12.03.01.30(C). Although the IGO concluded that DeShields did not exhaust administrative remedies, DeShields asserted in a filing with the IGO that he did, in fact, file an appeal with the Warden, but he received no response. Where there is a genuine issue

of material fact on whether he filed all the necessary appeals, the Court will not dismiss this claim based on a failure to exhaust administrative remedies.

## IV.    Due Process

DeShields alleges a violation of his due process rights relating to the imposition of sanctions against him as a result of the disciplinary proceedings following his stabbing. Under the Fourteenth Amendment to the United States Constitution, certain due process protections are required where an inmate faces the possible loss of diminution or good time credits. *See Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974); *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). These steps include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing at which the prisoner has the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564-66, 570-71. If these procedural protections are provided, due process will be satisfied if "there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Hill*, 472 U.S. at 455 (quoting *United States ex rel. Vajtauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927)).

Here, DeShields received the Notice of Inmate Rule Violation report, which listed the charges and provided the factual basis for them, and he was also notified in writing of the facts that he could request to have a representative at his hearing, call witnesses, and present evidence, yet he chose to waive these rights and instead accepted the plea agreement offered by the institution. As for whether there was evidence to support the determination, DeShields's guilty plea itself constituted sufficient evidence of the violation. Moreover, the Notice of Inmate Rule

10

Violation, signed under penalty of perjury, stated that DeShields attempted to hit Chase with a fan but "hit Officer Z. Mukangu with the fan in the back of his head" instead. Patuxent Records at 6, Mot. Ex. 2, ECF No. 14-7. Finally, a review of the surveillance video shows that DeShields seized the fan and, while swinging it toward Chase, pushed through Officer Mukangu, causing him to fall back. Thus, even though Officer Mukangu later clarified that DeShields had not actually struck him with the fan, the undisputed fact that he picked up the fan and pushed through Officer Mukangu while swinging it provided evidence in support of all of these charges, particularly on the specific violation of Inmate Rule 100, engaging in a disruptive act, on which the discipline was imposed. Because there is no genuine dispute of material fact on whether the minimum procedural requirements were met and there was "some evidence" of the violation resulting in sanctions, the Court will grant summary judgment to Defendants on the due process claim. *See Hill*, 472 U.S. at 455

## V.     Failure to Protect

As for the Eighth Amendment claim that Defendants failed to protect DeShields from the stabbing on October 20, 2020, the Court will likewise grant summary judgment to Defendants. The Eighth Amendment to the United States Constitution protects prison inmates from "cruel and unusual punishments." U.S. Const. amend. VIII. Though an Eighth Amendment claim could arise from a failure to protect an inmate from an assault by another inmate, "not every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016). Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant

11

physical or emotional injury" or a substantial risk of such an injury. *Id.* (quoting *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014)). Subjectively, the prisoner must establish that the prison officials exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). Such deliberate indifference exists if there was a substantial risk of serious harm that was "longstanding, pervasive, well-documented or, noted by prison officials in the past," and the prison official in question had been exposed to that information but did not reasonably respond to it. *Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016). Deliberate indifference also exists when prison officials were "aware that the plaintiff inmate face[d] a serious danger to his safety and they could avert the danger easily yet they fail[ed] to do so." *Id.* Where prison officials respond reasonably to the risk, they are not liable even if the harm was not ultimately averted. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

Although DeShields suffered an injury as a result of the stabbing, he cannot succeed on a claim that Defendants failed to protect him because even if, as he alleges, the prison could have had better security procedures, he has not alleged or provided facts that would demonstrate deliberate indifference to a specific known risk of harm. Here, there was no basis to suspect that Chase would attack DeShields. He was not a known security threat, he was not listed as an enemy of DeShields, and DeShields and Chase had lived in the same housing unit for approximately five months without incident. Moreover, as shown on the surveillance video, after DeShields was attacked, correctional officers responded reasonably by intervening within 30 seconds. The Court therefore finds that the record does not support an Eighth Amendment claim of a failure to protect DeShields from the attack.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative, Motion

for Summary Judgment will be granted. A separate Order shall issue.

Date: September 13, 2022

THEODORE D. CHUANG
United States District Judge

13